## Brown v. Threlkeld's Guardian.

(Decided September 26, 1913).

Appeal from Crittenden Circuit Court.

1. **Action—Common Law—Submission to Court Without Intervention of Jury—Finding—Effect of.**—Where a common law action is sub-

mitted without the intervention of a jury, the judgment of the
trial court is entitled to the same weight as the verdict of a well-
instructed jury, and cannot be reversed unless flagrantly against
the evidence.

2. Ejectment—Finding of Court—Evidence—Sufficiency.—In an action of ejectment, evidence examined and held to sustain finding
in favor of plaintiff.

3. Easement—Appurtenant—Steamboat Landing—Conveyance of—
Right to Use and Occupy Other Lands of Grantor.—Where a
grantor conveys a particular steamboat landing and certain described land to which it is appurtenant, the destruction of that
land by erosion gives to the grantee no right to use and occupy
other lands of the grantor for the purpose of landing boats.

L. H. JAMES and A. C. & V. Y. MOORE for appellant.

C. S. NUNN and JONES O. GILL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

R. W. Foster owned a large tract of land lying in
Crittenden county on the Ohio River. A portion of it
he devised to his nephew, Foster Threlkeld. Another
portion he devised to his niece, Clara T. Brown. On
February 24, 1903, Foster Threlkeld conveyed to his
sister, Clara T. Brown, the following described property:

"The Hurrican Steamboat Landing with all its
privileges, and described as follows: Beginning on the
bank of the Ohio River thence SE course with the fence
so as to include the new house to a line between Guess
and Threlkeld, thence north course to Hurricane creek,
thence down said creek to the Ohio River, thence down
said river to the beginning."

Subsequently, Foster Threlkeld died leaving surviving him an infant child, Foster Lee Threlkeld. During
the year 1911 the Peoples Bank & Trust Company qualified as his guardian. Claiming that defendants, Clara
T. Brown and her husband, Joe Brown, were wrongfully
in possession of about a half acre of land known as the
Tie Yard, plaintiff, Foster Lee Threlkeld, suing by his
guardian, Peoples Bank & Trust Company, brought this
action of ejectment against them to recover the property. The case was first tried before a jury, which returned a verdict in favor of plaintiff. For some reason
the trial court granted a new trial. Subsequently the
case was submitted to that court without the interven-

tion of a jury, and judgment rendered in favor of plaintiff. From that judgment this appeal is prosecuted.

At the outset it is insisted that the Peoples Bank & Trust Company had not the legal capacity to sue. In this connection it is insisted that neither its original nor amended articles of incorporation confer on it the power to act as guardian. The Peoples Bank & Trust Company was first incorporated under the name of the Peoples Bank, with power to do a general commercial banking business. Subsequently its articles of incorporation were amended, and its name changed to the Peoples Bank & Trust Company.

The amended articles further provide:

"The nature of the business carried on and conducted shall be a general banking and trust business, as provided for by chapter 32 of the Kentucky Statutes, 1903, relating to corporations, banks, trust companies, and combined banks and trust companies, or such parts thereof as apply to corporations of their character."

It is argued that the foregoing provision is not a compliance with subsection 3, section 539, chapter 32, Kentucky Statutes, which provides:

"Such persons shall execute articles of incorporation which shall specify: * * *

"(3) The nature of the business or objects or purposes proposed to be transacted, promoted or carried on."

The statute provides for the creation of a corporation for the purpose of conducting both a banking and trust business. Section 612a, Kentucky Statutes. Section 606, Kentucky Statutes, provides:

"Any trust company organized under this article may be appointed and act as guardian of infants, executors, administrator or curator of estates of decedents, committee of persons of unsound mind, receiver or trustee for persons or estates; and may act as agent or attorney for the transaction of any business or the management of estates, the collection of rents, accounts, interest, dividends, notes, bonds, securities for money and debts, and demands of every character; may receive on deposit and for safekeeping, gold, silver, jewelry, money and other personal property of every kind, and shall have a lien upon all personal property deposited with it for its charges."

As chapter 32, Kentucky Statutes, fully sets forth the nature of business that may be carried on by a combined bank and trust company, and the powers which such company may exercise, and as one of these powers is the power to act as guardian, we conclude that the amended articles are sufficiently definite to state the precise "nature of the business, or the objects or purposes proposed to be transacted, promoted or carried on."

The particular tract of land in controversy lies, according to plaintiff's evidence, just west of what is known as the Hurricane Steamboat Landing, while defendants claim that it is included in the deed from Foster Threlkeld to Clara T. Brown, and is a part of the Hurricane Steamboat Landing. The case really turns on the location of the line "thence SE course with the fence so as to include the new house to a line between Guess and Threlkeld." According to plaintiff's evidence there was in existence at the time of the deed a post and rail fence extending from the Ohio River to the line between Guess and Threlkeld, and including the new house. This fence remained there for some time, and was repaired now and then. Joe Brown, Clara Brown's Husband, tore this fence away. For a long time defendants recognized this fence as the dividing line, but after a while the waters of Hurricane Creek and of the Ohio River began to cut away the bank where the Hurricane Steamboat Landing was located, and thereupon defendants moved west on the adjoining land belonging to plaintiff. This land was known as the Tie Yard, and one of the considerations stated in the deed is the right of "ingress and egress over said premises to the Tie yard." The evidence for the defendants is to the effect that Joe Brown was a river man, and that Foster Threlkeld intended to give to his sister the steamboat landing so that they could make a living out of it. The fence referred to in the deed was not the old stationary fence, but was a portable fence which, at the time of the execution of the deed, stood several feet west. The action being at common law, and being submitted without the intervention of a jury, the judgment of the trial court is entitled to the same weight as the verdict of a well-instructed jury, and cannot be reversed unless flagrantly against the evidence. Not only is his finding not flagrantly against the evidence, but, in our opinion, is supported by a preponderance of the evi-

dence. The old stationary fence runs near the house, and if that line be continued it reaches the line between Guess and Threlkeld. If the line be run according to defendant's contention it does not reach the line between Guess and Threlkeld. It is much more probable that the grantor in the deed fixed the west line to run with the stationary fence rather than with the portable fence, which was moved about from place to place as high water required. Furthermore, the conduct of the defendants, who obtained permission from Foster Threlkeld's former guardian to occupy a portion of the Tie Yard, is strongly persuasive of the fact that they recognized the stationary fence, which was a boundary between Hurricane Steamboat Landing and the Tie Yard, as the fence referred to in the deed. Furthermore, the fact that the right of egress and ingress from and to the Tie Yard over the premises conveyed by the deed was one of the considerations for the deed tends to support the conclusion that it was not the purpose of the grantor to convey the Tie Yard, which is now the property in dispute.

But it is argued that it was the grantor's purpose to give his sister a steamboat landing, and that this right is a franchise appurtenant to the farm, and continues, notwithstanding the fact that that portion of the farm described in the deed was worn away by erosion. There might be some merit in this contention if the grantor had deeded his sister a boat landing in general terms. This, however, he did not do. He deeded to her not a general right to land boats, but a particular boat landing, to-wit: The Hurricane Steamboat Landing. Then, to make more certain what was meant by the Hurricane Steamboat Landing, he describes with reasonable particularity the precise land which he intended to convey. In other words, it was a particular landing, appurtenant to the tract of land described in the deed, and not a general steamboat landing appurtenant to any of the grantor's land not included within the deed. Having described the landing and the land to which it was appurtenant, and which was conveyed by the deed, it follows that the destruction of that land by erosion did not give to the grantor any right to use any of the grantor's remaining land for the purpose of landing boats. Weiss v. Meyer, 55 Ark., 18.

Judgment affirmed.